UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

DAVID E. HUESTON,

    Plaintiff,

     v.         CAUSE NO. 1:22-CV-173-HAB-SLC

SHERIFF OF ALLEN COUNTY,

    Defendants.

OPINION AND ORDER

   This case stems from the class action *Morris v. Sheriff of Allen County*, No. 1:20-CV-34-DRL, 2022 WL 971098 (N.D. Ind. Mar. 31, 2022), regarding the conditions of confinement at the Allen County Jail. *Morris v. Sheriff of Allen County*, No. 1:20-CV-34-DRL, 2022 WL 971098 (N.D. Ind. Mar. 31, 2022). In that case, the court certified a class of "all persons currently confined, or who would in the future be confined, in the Allen County Jail" under Federal Rule of Civil Procedure 23(b)(2) for injunctive and declaratory relief. *Id.* at *1. The court found at summary judgment that certain conditions of confinement at the jail violated the Eighth and Fourteenth Amendments to the Constitution: "The overcrowding problem at the jail—which in turn has spawned an increased risk of violence, unsanitary and dangerous conditions in cells, insufficient recreation, and classification difficulties—has deprived this class of inmates 'the minimal civilized measure of life's necessities.'" *Id.* at *5 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The court also entered a permanent injunction to address the overcrowding, lack of sufficient staffing and recreation, and inadequate supervision of

prisoners and continues to monitor the remediation of the unconstitutional

conditions. *Id.* at 17.

Hueston filed a complaint seeking damages for being detained starting April 27,

2021, in the unconstitutional conditions of confinement identified in *Morris*.[1] ECF 1.

However, he did not allege how the conditions affected him personally; without an

injury, he did not have a claim for damages under 42 U.S.C. § 1983. ECF 10. He was

given the opportunity to file an amended complaint to identify any potential injury he

may have suffered from the jail's conditions. *Id.* He has done so. ECF 11. Under 28

U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it

if the action is frivolous or malicious, fails to state a claim upon which relief may be

granted, or seeks monetary relief against a defendant who is immune from such relief.

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however

inartfully pleaded, must be held to less stringent standards than formal pleadings

drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and

citations omitted).

Hueston's amended complaint identifies three types of injuries he says he

suffered at the Allen County Jail: (1) the overcrowding and understaffing led to physical

assaults; (2) the lack of recreation and exercise caused his health to deteriorate; and

(3) the jail's response to COVID-19 was deficient. This order examines each one in turn.

### (1) Failure to Protect

---

[1] When Hueston filed this case, he was still being detained at the Allen County Jail. ECF 1. But in June 2022, he was transferred out of Allen County Jail to a detention facility in Ohio. ECF 5.

Hueston identifies three instances in which he alleges the overcrowding and understaffing led to him being assaulted by one of his cellmates, Joseph Lewis. ECF 11 at 2. In one instance, he says the unrelenting tension of the overcrowding led to the two of them getting into a fight "over a seat for lunch." *Id.* Further, because the jail was understaffed, no staff member was present to intervene in the fight. *Id.* He then alleges the two got into a fight "at night over getting stepped on." *Id.* at 5. He explains that he was sleeping on the floor, his cellmate fell on him, and they had an altercation. *Id.* at 13. Again, there was no staff on the floor to intervene. *Id.* Finally, he alleges that the jail has a rule not to move any inmates during evening shift. *Id.* at 5. Hueston and another cellmate told a correctional officer that there would be violence if the third cellmate, Lewis, were not moved. *Id.* But because of the no-move policy, the three had to remain in the same cell. *Id.* The officer tried to force them back into the cell, and violence occurred. *Id.*

In addition, Hueston alleges that Lewis should never have been placed in his cell and was there only because the jail did not have the space to properly separate inmates into the right classification groups. ECF 11 at 6. Hueston contends Lewis' mental health conditions made him dangerous and in need of a specialized placement at the jail. *Id.* But because of the overcrowding, the jail did not have the space to house Lewis appropriately. *Id.*

"Incarcerated people have a clearly established right to be free from physical harm inflicted by others in the institution." *Kemp v. Fulton Cnty.*, 27 F.4th 491, 494 (7th Cir. 2022) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) ("[P]rison officials have a

duty . . . to protect prisoners from violence at the hands of other prisoners.")). A pretrial

detainee states a failure to protect claim when he alleges:

> (1) The defendant made an intentional decision with respect to the
> conditions under which the plaintiff was confined;
> (2) Those conditions put the plaintiff at substantial risk of suffering
> serious harm;
> (3) The defendant did not take reasonable available measures to abate that
> risk, even though a reasonable officer in the circumstances would have
> appreciated the high degree of risk involved—making the consequences
> of the defendant's conduct obvious; and
> (4) By not taking such measures, the defendant caused the plaintiff's
> injuries.

*Id*. at 496 (emphasis omitted) (quoting *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th

Cir. 2016) (en banc)). As to the second element, the Seventh Circuit has equated

"substantial risk" to "risks so great that they are almost certain to materialize if nothing

is done." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005). The third element "requires

only that the defendant's conduct be objectively unreasonable." *Kemp*, 27 F.4th at 497.

Overall, reasonableness "must be determined in light of the totality of the

circumstances." *Pulera v. Sarzant*, 966 F.3d 540, 550 (7th Cir. 2020).

Where a plaintiff alleges that his injury stems from the jail's official policy or

practice, he must also satisfy the strict causation requirements of *Monell v. Dep't of Soc.

Servs. of City of New York*, 436 U.S. 658 (1978), for municipal fault. "A plaintiff must

prove that it was obvious that the municipality's action would lead to constitutional

violations and that the municipality consciously disregarded those consequences." *First

Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 987 (7th Cir.

2021).

Here, Hueston plausibly alleges that the overcrowding and understaffing problems at the jail were widespread and well known. Although there is no indication that this specific threat to Hueston from his cellmate was known to the Sheriff, it is reasonable to infer that this type of violence is an obvious consequence of these crowded and understaffed conditions. *See, e.g., Jensen v. Clarke,* 94 F.3d 1191, 1195 (8th Cir. 1996) (finding that overcrowding created a substantial risk of harm to inmates when the jail assigned them to cells randomly without consideration of whether new cellmates would be compatible). It remains to be seen whether the Sheriff or other policymakers took reasonable measures to abate the overcrowding and understaffing issues. But at this point, Hueston has plausibly alleged that the conflict he experienced with his cellmate was an obvious consequence of the overcrowding and understaffing and therefore may proceed on a Fourteenth Amendment claim for failure to protect.

### (2) Recreation

Hueston further alleges that his health was negatively affected after spending a year with no access to recreation or other opportunities for exercise. ECF 11 at 3. He alleges that he suffers from three different lung diseases, and to maintain his lung function he needs to exercise regularly. *Id.* at 9. Because he went a year without exercise, his lung function is now at a dangerously low level. *Id.* He says that as a result, he needs to take frequent breaks to sit and rest whenever he does anything. *Id.* at 10.

Because Hueston was a pretrial detainee, his claims must be assessed under the Fourteenth Amendment. *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 856 (7th Cir. 2017). "[T]he Fourteenth Amendment's Due Process Clause prohibits holding

5

pretrial detainees in conditions that 'amount to punishment.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). Inmates are held in conditions that amount to punishment when they are not provided with "the minimal civilized measure of life's necessities." *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). This includes access to reasonable exercise opportunities. *Delany v. DeTella*, 256 F.3d 679, 683-84 (7th Cir. 2001); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996) ("Lack of exercise may rise to a constitutional violation in extreme and prolonged situations where movement is denied to the point that the inmate's health is threatened."). Beyond this, a pretrial detainee must also plausibly allege a defendant's "response was objectively unreasonable under the circumstances" and that the defendant "acted purposely, knowingly, or recklessly with respect to the consequences of [his] actions." *Mays v. Emanuele*, 853 F. App'x 25, 26-27 (7th Cir. 2021). "A jail official's response to serious conditions of confinement is objectively unreasonable when it is 'not rationally related to a legitimate nonpunitive governmental purpose' or is 'excessive in relation to that purpose.'" *Id.* (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)).

Hueston plausibly alleges the overcrowded conditions at the jail resulted in a lack of recreation, which in turn caused the alleged deterioration of his health. Thus, Hueston may proceed on a Fourteenth Amendment claim for a denial of reasonable exercise opportunities.

### (3) COVID-19

Finally, Hueston includes allegations relating to his contracting COVID-19, but these allegations do not state a claim. He explains that because of overcrowding, jail staff did not quarantine the occupants of Cell 05 in C-Block when they were suspected to have COVID-19 (he does not say when this occurred). ECF 11 at 10. Hueston alleges that after this, everyone on the cellblock contracted COVID-19, and then the entire block was locked down for 14 days. *Id.* at 11.

Hueston alleges that he did not receive any treatment in those 14 days or for weeks afterwards, despite having a severe case of COVID-19. ECF 11 at 11. He says that he lost consciousness at one point, but the officers who witnessed it sent medical staff an email about his situation, rather than calling a signal to get him immediate medical attention. *Id.* at 5. He now has lingering health effects from COVID-19, including eye damage, circulation problems, migraines, dizziness, and worsened lung condition. *Id.* at 11.

Sheriff Gladieux cannot be held responsible in his individual capacity for the independent actions of his subordinates who allegedly did not respond appropriately to Hueston's medical need. "Liability under § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly." *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). "Only persons who cause or participate in the violations are responsible." *George v.*

*Smith*, 507 F.3d 605, 609 (7th Cir. 2007). Thus, he does not state a claim against the Sheriff in his individual capacity.

To proceed on this claim, Hueston must allege a plausible connection between a jail policy and the injuries he suffered. He blames contracting COVID-19 on the jail staff's decision not to quarantine the occupants of one cell on his block. But he cannot pluck out one allegedly deficient response and claim the entire system is flawed. He does not say what other COVID-19 precautions the jail took, and it appears from the complaint that the jail's COVID-19 policy was to quarantine entire blocks, as opposed to individual cells.

The court must afford substantial deference to prison officials on matters that trigger safety and security concerns, including where best to house inmates within their custody. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979) ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."). As the Seventh Circuit has explained, "safety and security concerns play a significant role in a correctional administrator's housing decisions: jails and prisons require some degree of flexibility in choosing cell assignments, as they need to ensure, for example, that detainees are assigned to the living quarters corresponding with their security classifications and factoring in particular vulnerabilities that increase security risks." *Mays v. Dart*, 974 F.3d 810, 819 (7th Cir. 2020). "This is especially true at [a jail] where the population fluctuates daily given the number of bookings and releases that take place." *Id.* The fact that jail staff

chose to keep the occupants of Cell 05 in place instead of moving them to another area of the jail and risking infecting another group of inmates, cannot be considered objectively unreasonable or unrelated to legitimate penological interests. *See Grimes v. Dane Cnty. Jail*, No. 21-CV-685-JDP, 2022 WL 136801, at *2 (W.D. Wis. Jan. 14, 2022) (inmate did not state due process claim in connection with jail's COVID-19 quarantine procedures). How best to manage the spread of COVID-19 within a correctional facility in light of security and space concerns is a difficult question, one on which prison staff are entitled to deference. *Mays*, 794 F.3d at 820-21; *see also Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002) ("[T]he mere failure . . . to choose the best course of action does not amount to a constitutional violation."). Here, singling out one aspect of the jail's COVID-19 response does not plausibly allege the jail's overall response to COVID-19 was objectively unreasonable.

## Conclusion

As a final matter, the court notes that Hueston names as a defendant both the Sheriff of Allen County, Indiana, and David Gladieux. ECF 11 at 1. It is unclear whether he intended to sue them as two separate defendants, but for clarity the court will dismiss David Gladiuex as a defendant but keep the Sheriff of Allen County in an official capacity. This case does not state any individual capacity claims against David Gladieux. *See Budd v. Motley*, 711 F.3d 840, 843-44 (7th Cir. 2013) (concluding plaintiff stated only an official capacity claim concerning alleged poor jail conditions because he "describe[ed] a municipal practice or custom in running the jail, rather than the Sheriff's personal conduct"). A claim against David Gladieux in his official capacity is the same

as a suit against the Sheriff's Office. *See McMillian v. Monroe Cnty.*, 520 U.S. 781, 785 n.2 (1997) ("[A] suit against a governmental officer in his official capacity is the same as a suit against the entity of which the officer is an agent." (quotation marks and brackets omitted)). Therefore, this case will proceed against the Sheriff of Allen County only. However, "a municipality is immune from punitive damages," so Hueston is limited to recovering compensatory damages. *Est. of LaPorta*, 988 F.3d at 985.

For these reasons, the court:

(1) GRANTS David E. Hueston leave to proceed against the Sheriff of Allen County in an official capacity for compensatory damages for unconstitutionally crowded and understaffed conditions at the Allen County Jail from April 27, 2021, through June 2022, resulting in violence against him in violation of the Fourteenth Amendment;

(2) GRANTS David E. Hueston leave to proceed against the Sheriff of Allen County in an official capacity for compensatory damages for unconstitutionally crowded and understaffed conditions at the Allen County Jail from April 27, 2021, through June 2022, resulting in a lack of recreation that harmed his health in violation of the Fourteenth Amendment;

(3) DISMISSES all other claims;

(4) DISMISSES David Gladiuex;

(5) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to

locate and serve process on) the Sheriff of Allen County at the Allen County Jail, with a copy of this order and the complaint (ECF 11);

(6) ORDERS the Allen County Jail to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(7) ORDERS, under 42 U.S.C. § 1997e(g)(2), the Sheriff of Allen County to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on October 27, 2022.

 s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT